IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | |
|---|---|
| MICHAEL MOATES, DC CHRONICLE, and DC CHRONICLE LIMITED,<br><br>                      Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC. and AT&T INC.,<br><br>                      Defendants. | Case No. |

**NOTICE OF REMOVAL**

      Defendant Facebook, Inc. ("Facebook") hereby gives notice of the removal of a civil action, Case No. 21-6407-431, from the 431st District Court of Denton County, Texas to the United States District Court for the Eastern District of Texas, Sherman Division.  Removal of this action is proper pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 for the reasons set forth below.

**INTRODUCTION**

      1.      Facebook seeks to return this dispute to the same federal district court where it began.  Although the present action by Plaintiff Michael Moates and his company DC Chronicle purports to be a new case, it is merely a repackaged version of another lawsuit filed (and recently dismissed) by Mr. Moates in this Court: *Michael Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ (the "Prior Action").  The present lawsuit—which improperly joins AT&T Inc., an in-state defendant who bears no real connection to Plaintiffs' claims against Facebook, and against whom Plaintiffs cannot state a claim in any event—is a transparent and baseless attempt by Plaintiffs to evade this Court's federal subject-matter jurisdiction.

      2.      Plaintiffs initially chose to litigate their claims in this Court.  They filed the Prior Action here, invoking 28 U.S.C. § 1332 and asserting that this Court had diversity jurisdiction

1

over their state-law claims, as well as federal question jurisdiction over their now-abandoned federal claims.  *See* Prior Action, Dkt. 5[1] (First Amended Complaint) ¶¶ 2, 4 (asserting complete diversity among the parties and alleging that the amount in controversy exceeds $75,000); *id.*, Dkt. 20 (Second Amended Complaint) ¶¶ 4, 6 (same); *see also id.*, Dkt. 1 (Complaint) ¶ 2 (alleging that the amount in controversy exceeds $75,000).

3.      But Mr. Moates took a different tack after the assigned magistrate judge issued several rulings in Facebook's favor, including a report and recommendation that the Prior Action be transferred to the U.S. District Court for the Northern District of California pursuant to a valid forum-selection clause in Facebook's Terms of Service ("Terms"), to which Mr. Moates had agreed.  *See* Prior Action, Dkt. 42 (Report and Recommendation) at 4–6.  Before this Court could rule on that report and recommendation, Mr. Moates voluntarily dismissed the Prior Action.  *See id.*, Dkt. 50.  Nearly a week before that voluntary dismissal, Plaintiffs filed this lawsuit in Denton County, seeking relief that is substantially identical to the relief sought in the Prior Action.

4.      Removal of this action from the 431st District Court of Denton County to the United States District Court for the Eastern District of Texas, Sherman Division is proper pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

5.      First, removal is timely under 28 U.S.C. § 1446(b)(1) because it is being filed within thirty (30) days after the receipt by Facebook of the Complaint and Summons in this action.  *See* Declaration of Facebook Employee Jenny Pricer ("Pricer Decl.") ¶ 2; Ex. 3; *see also* Fed. R. Civ. P. 6(a)(1).[2]

---

[1] Throughout this Notice of Removal, Facebook cites to various publicly available pleadings from the Prior Action in this Court (4:20-cv-896-ALM-KPJ), incorporating those pleadings by reference in lieu of attaching copies here.

[2] True and correct copies of all "process, pleadings, and orders served upon" Facebook, *see* 28 U.S.C. § 1446(a), are attached as Exhibits 1 through 7 to the contemporaneously filed Jordan Declaration.  *See* Jordan Decl. ¶ 2.  Throughout this Notice of Removal, all exhibit citations ("Ex.") refer to exhibits attached to that Declaration.

6. Second, the United States District Court for the Eastern District of Texas, Sherman Division, is the appropriate venue for removing an action from the 431st District Court of Denton County, where the state action is pending, under 28 U.S.C. § 1441(a) and 28 U.S.C. § 124(c)(3).

7. Next, this court has diversity jurisdiction under 28 U.S.C. § 1332(a). There is complete diversity among the proper parties. Plaintiffs are all citizens of Texas. *See* Ex. 5 (Amended Petition) ¶ 1; *see also infra* ¶ 20. Facebook is a Delaware corporation with its principal office in California. Pricer Decl. ¶ 3. And as explained further below, the citizenship of AT&T Inc. is immaterial because AT&T was not "properly joined" as a defendant in this action. *See* 28 U.S.C. § 1441(b)(2). Additionally—and as set out further below—a preponderance of the evidence establishes that Section 1332(a)'s amount-in-controversy is satisfied, including because Plaintiffs[3] have admitted three times before this Court that their claims in the Prior Action, which focused on substantially the same injuries alleged in this case, put more than $75,000 at issue.

8. Finally, Facebook is complying with all procedural requirements in filing this Notice of Removal.

## BACKGROUND

9. Plaintiffs brought the Prior Action in late 2020, seeking redress for their allegations that Facebook had unlawfully deprived Mr. Moates of access to various Facebook-owned and Facebook-related products and services—including Instagram, WhatsApp, and Oculus—by disabling Mr. Moates's Facebook and Instagram accounts. *See* Prior Action, Dkt. 20 at 1. In addition to alleging that Facebook had wrongfully disabled his accounts, Plaintiff

---

[3] Throughout this Notice of Removal, Facebook uses the singular "Plaintiff" to refer to Michael Moates and the plural "Plaintiffs" to refer to Michael Moates and DC Chronicle. Although DC Chronicle was a party to the initial Complaint and the First Amended Complaint in the Prior Action, *see* Prior Action, Dkt. 1 & 5, Mr. Moates dropped DC Chronicle from the Prior Action when he filed the Second Amended Complaint, *see id.*, Dkt. 20. Accordingly, Facebook uses the singular "Plaintiff" when summarizing any pleadings or occurrences in the Prior Action that followed the filing of the Second Amended Complaint.

claimed in the prior action that Facebook deprived him of the benefit of advertising services he purchased from Facebook. *See id.* ¶¶ 1–2, 8–9, 11–13. Plaintiff asserted that Facebook's conduct amounted to a breach of contract and that it violated the Texas Deceptive Trade Practices Act, the Texas Constitution, Texas privacy law, and various federal statutes, including federal antitrust laws. *Id.* at 31–45. To remedy Plaintiff's alleged injuries, the Prior Action sought compensatory damages, punitive damages, declaratory relief, and an injunction requiring that Facebook restore Plaintiff's access to his disabled accounts and return data that Facebook had allegedly misappropriated from Plaintiff. *Id.* at 45 (Prayer for Relief).

10. At first, Plaintiff *wanted* to litigate his claims in this Court. All three complaints in the Prior Action alleged that this court had subject-matter jurisdiction over Plaintiff's claims, including because there was complete diversity among the parties and the amount-in-controversy exceeded $75,000. *See* Prior Action, Dkt. 1 ¶ 2; *id.*, Dkt. 5 ¶¶ 2, 4; *id.*, Dkt. 20 ¶¶ 4, 6. And when Facebook filed a motion to transfer the Prior Action to the U.S. District Court for the Northern District of California, *see id.*, Dkt. 29, Plaintiff opposed that motion, arguing that this federal court was the proper venue to adjudicate his dispute, *see id.*, Dkt. 37. *See also id.*, Dkt. 45 (Pl.'s Objections to the Report and Recommendation).

11. Plaintiffs had no success during the first eight months of litigation in this Court, during which time the assigned magistrate judge rejected numerous of Plaintiffs' baseless positions. First, the magistrate judge ruled that DC Chronicle, an alleged corporation, could not proceed on a *pro se* basis. *Id.*, Dkt. 12 at 2; *see also Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (observing "the well-settled rule of law that a corporation cannot appear in federal court unless represented by a licensed attorney"). Next, the magistrate judge issued a thorough 17-page order rejecting Plaintiff's request for a temporary restraining order and preliminary injunction against Facebook. *See* Prior Action, Dkt. 26. The magistrate later issued a 21-page report recommending that this Court grant Facebook's motion to transfer the Prior Action to the Northern District of California pursuant to the forum-selection clause in Facebook's Terms, which the magistrate held to be valid and enforceable. *Id.*, Dkt. 42. And

most recently, the magistrate judge rejected Plaintiff's request that she recuse herself from the case. *Id.*, Dkt. 49.

12. On July 29, 2021, while the Prior Action was still pending in this Court, Plaintiffs filed the present action in the 431st District Court of Denton County, Texas. Ex. 1. Plaintiffs filed an amended complaint several weeks later. Ex. 5.

13. On August 4, 2021, Plaintiff voluntarily dismissed the Prior Action pursuant to Federal Rule of Civil Procedure 41. Prior Action, Dkt. 50.

14. Like the Prior Action, the present case focuses on alleged events relating to the disabling of Michael Moates's Facebook and Instagram accounts. Both lawsuits allege that Facebook wrongfully and unlawfully disabled Moates's accounts. *Compare, e.g.*, Ex. 5 at 9 *with* Prior Action, Dkt. 20 at 8. Both lawsuits claim that Facebook's conduct breached contracts between Facebook and Mr. Moates. *Compare, e.g.*, Ex. 5 at 18–20 *with* Prior Action, Dkt. 20 at 28, 34–35, and 38–42. Both lawsuits also contend that Facebook's conduct violated Texas's Deceptive Trade Practices Act and the Texas Constitution. *Compare, e.g.*, Ex. 5 at 20–26 and 35–36 *with* Prior Action, Dkt. 20 at 32–35 and 38–44.

15. Unlike the Prior Action, the present case does not contain any claims arising under federal law. It does, however, allege numerous additional causes of action against Facebook that were not at issue in the Prior Action, including claims of defamation, "Aiding and Encouraging Suicide," strict products liability, negligent product design, breach of the implied warranty of merchantability, statutory fraud, statutory theft, and violations of various Texas statutes relating to data security, privacy, and biometric data, including Tex. Bus. & Com. Code §§ 521.052(a)) and 503.001, and Penal Code Title 7 Chapter 33.02. *See* Ex. 5 at 17–18, 26–30, 31–37.

16. The present case also purports to assert claims against AT&T, including claims for fraud (against AT&T alone) related to Mr. Moates's alleged purchase of a phone, as well as claims alleging that AT&T and Facebook conspired to share Mr. Moates's private information

without his consent, and that AT&T and Facebook violated a Texas criminal statute by accessing Mr. Moates's data without consent. Ex. 5 at 37–40.

17. Plaintiffs seek a broad range of relief, including unspecified general, actual, and compensatory damages; "special" damages; exemplary damages; nominal damages; and an injunction requiring that Facebook reactivate Plaintiffs' accounts, provide Plaintiffs with various data connected to those accounts, and reactivate "the software on the Oculus devices." *Id.* at 40–41 (Prayer for Relief).

## TIMELINESS OF REMOVAL

18. Facebook was served with the Complaint and Summons on August 5, 2021. Pricer Decl. ¶ 2; Ex. 3. This Notice of Removal is timely under 28 U.S.C. § 1446(b)(1) because it is being filed within thirty (30) days after the receipt of the Summons and Complaint in this action by Facebook. *See id.*; *see also* Fed. R. Civ. P. 6(a)(1).

## PLACE OF REMOVAL

19. The United States District Court for the Eastern District of Texas, Sherman Division, is the appropriate venue for removing an action from the 431st District Court of Denton County, Texas, where the state action is pending. 28 U.S.C. § 1441(a); *id.* § 124(c)(3).

## DIVERSITY OF CITIZENSHIP

20. Plaintiffs allege that Mr. Moates "is an individual who resides in Denton County, Texas." Ex. 5 at 1. It can therefore be inferred that Mr. Moates is domiciled in Texas. *See District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary."). As such, based on Plaintiffs' own allegations, Mr. Moates is a citizen of Texas. *See Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) (holding that "[w]ith respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile" and that "the place of residence is prima facie the domicile").

1739803

21. Plaintiffs allege that Plaintiff DC Chronicle Limited is a "non-profit corporation in the State of Texas" and that DC Chronicle—allegedly a separate *for-profit* entity[4]—is an "unincorporated sole proctorship [sic] in the State of Texas." Ex. 5 at 1. Both entities' corporate citizenship is rooted in Texas alone. Because DC Chronicle is allegedly a sole proprietorship, Mr. Moates's "individual citizenship is determinative" of DC Chronicle's citizenship. *See Nyamtsu v. Melgar*, 2013 WL 6230454, at *3 n.4 (S.D. Tex. Dec. 2, 2013); *see also Linder Enterprises v. Martinringle, Inc.*, 2007 WL 3095382, at *1 (N.D. Tex. Oct. 22, 2007) ("Generally, the citizenship of artificial entities other than corporations is determined by the citizenship of their members."). Meanwhile, Plaintiffs' allegations indicate that DC Chronicle Limited is a corporation headquartered "***in*** the State of Texas," and Plaintiffs do not allege that DC Chronicle Limited was incorporated in any other state. *See* Ex. 5 at 1 (emphasis added). Indeed, a public-records search establishes that DC Chronicle Limited is, in fact, a Texas-based corporation.[5] *See* Jordan Decl. ¶ 3; Ex. 8.

22. Facebook, meanwhile, is a Delaware corporation with its principal place of business in California. Pricer Decl. ¶ 3. Accordingly, there is complete diversity between Facebook (a citizen of Delaware and California) and Plaintiffs (citizens of Texas).

23. Although Plaintiffs do not allege any facts to establish the citizenship of Defendant AT&T, Facebook understands that AT&T's principal place of business is in Texas. AT&T's citizenship is immaterial, however, because AT&T was improperly joined to this action. "If a party is improperly joined, a court may disregard the party's citizenship for purposes of determining subject matter jurisdiction." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d

---

[4] In the Prior Action, Plaintiffs did not distinguish between DC Chronicle and DC Chronicle Limited. Instead, the Prior Action simply alleged that "DC Chronicle"—not DC Chronicle Limited—was "a 501(c)3 non-profit charity organization." *See* Prior Action, Dkt. No. 1 at 1 (caption page); *id.*, Dkt. No. 5 at 1 (caption page).

[5] Additionally, it appears that no corporation by the name of "DC Chronicle Limited" is incorporated in either California or Delaware, the two states of which Facebook is a corporate citizen. Jordan Decl. ¶¶ 4–5.

1739803

170, 183 (5th Cir. 2018); *see also Selery Fulfillment, Inc. v. Colony Ins. Co.*, 2021 WL 90117, at *2 (E.D. Tex. Jan. 11, 2021) ("If a party is 'improperly joined,' then that party is not considered 'real and substantial' for purposes of the action." (footnote omitted)).

24. As the party seeking removal based on improper joinder, Facebook bears "the heavy burden" of proving that AT&T "has been fraudulently joined to defeat diversity." *McAdams v. Palomar Specialty Ins. Co.*, 2019 WL 2553616, at *4 (E.D. Tex. May 29, 2019). Facebook satisfies that burden here. Joinder is improper because Plaintiffs are unable to establish a cause of action against AT&T. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) ("[T]he test for improper joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." (quotation marks omitted)). "In most cases, to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* Where, however, "the plaintiff's complaint has misstated or omitted discrete facts that would determine the propriety of joinder, the court may instead pierce the pleadings and conduct a summary inquiry." *Id.* (quotation marks omitted).

25. Plaintiffs' claims against AT&T can be split into two categories: those asserted against AT&T alone ("AT&T Claims") and those asserted jointly against AT&T and Facebook ("Joint Claims"). Plaintiffs cannot establish a cause of action under any claim in either category.

26. For the two AT&T Claims, Plaintiffs allege that AT&T violated fraud provisions of the Texas Penal Code by fraudulently failing to honor an alleged contract regarding the trade-in value of Mr. Moates's iPhone. *See* Ex. 5 at 37–38 (invoking Penal Code Title 7 Chapter 32.46 and Chapter 32.32). These claims fail for three separate reasons.

    i) *First*, Plaintiffs lack standing to bring these claims because "[t]he Texas Penal Code does not create a private right of action." *Paselk v. Bayview Loan Servicing, LLC*,

2014 WL 12635934, at *4 (E.D. Tex. Apr. 17, 2014); *see also Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied) (same).  This fundamental flaw dooms Plaintiffs' AT&T Claims.

ii) ***Second***, Plaintiffs' statutory fraud claims fall short of satisfying Rule 9(b) of the Federal Rules of Civil Procedure.  Any claim sounding in fraud must comply with the heightened pleading standards of Rule 9(b), which requires that a plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993) ("[A]llegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8."); *see also Selery Fulfillment*, 2021 WL 90117, at *3 (observing that a court conducting a "12(b)(6)-type" improper joinder analysis applies federal pleading standards).  The Fifth Circuit has construed this "particularity" requirement as demanding, at a minimum, that a plaintiff must describe "the who, what, when, and where" supporting their fraud allegations.  *Molina-Aranda v. Black Magic Enterprises, LLC*, 983 F.3d 779, 784 (5th Cir. 2020).  Although Plaintiffs allege that AT&T induced Mr. Moates to buy a phone in November 2020, Plaintiffs fail to identify with particularity what "promotion" or "offer" Mr. Moates relied upon, what that "promotion" or "offer" contained, or where he purchased the phone.  *See* Ex. 5 at 37.  Nor do Plaintiffs summarize or attach any of the purported contracts referenced in the AT&T Claims.  This lack of specificity fails to put AT&T on fair notice of the claims alleged against it.

iii) ***Third***, in addition to the fundamental pleading defects discussed above, Facebook understands that these AT&T Claims fail for an additional reason to be detailed in a forthcoming pleading by AT&T.  Specifically, Facebook understands that AT&T plans to file a motion and/or affidavit stating that Plaintiff Moates does not have an active account with AT&T, such that there is no good-faith basis for the factual allegations underlying the AT&T Claims.  In the meantime, AT&T has already filed a Verified Denial and Original Answer in the 431st District Court of Denton County, Texas pleading that Plaintiffs "sued the wrong defendant," that AT&T "is not a proper party," and that AT&T "was not involved in the action complained of in

the Plaintiffs' petition." *See* Ex. 7 at 1.  Facebook reserves the right to submit further argument on this issue, including in its briefing on any forthcoming motion to remand filed by Plaintiffs.

27. The Joint Claims against AT&T and Facebook fare no better.

   i) Four of the five Joint Claims allege that AT&T and Facebook conspired to harm Plaintiff, whether (1) by "sharing [] confidential information about the Plaintiff without consent" (Count One); (2) by Facebook "shar[ing] private information with AT&T without consent for the purposes of advertising," apparently resulting in Mr. Moates being subjected to an AT&T advertisement suggesting that he has anxiety (Count Two); (3) by Facebook tracking Mr. Moates's browsing history, and then "us[ing] that information" with AT&T "to serve ads" (Count Three); or (4) by each using a program called Pixel allegedly to track Mr. Moates without his consent (Count Four).  *See* Ex. 5 at 38–39.

   ii) All four of Plaintiffs' conspiracy counts fail to satisfy Federal Rule of Civil Procedure 8, which requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 serves "to give the defendant fair notice of" (1) "what the claim is" as well as (2) "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs' vague conspiracy averments fail to provide such notice, as they do not allege *facts* giving rise to a plausible inference that Plaintiffs are actually entitled to any relief.  *See Innova Hosp. SanAntonio, Ltd. P'ship. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (holding that a complaint "must contain sufficient factual matter which, when taken as true, states a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) challenge (citing *Twombly*, 550 U.S. at 570)).

   iii) None of the four conspiracy counts alleges adequate facts to satisfy all five essential elements of a claim for civil conspiracy:  "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *MVS*

*Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 196 (Tex. App. 2017). In particular, Plaintiffs' allegations do not satisfy the second, third, fourth, or fifth essential elements. The amended complaint contains zero well-pleaded facts indicating (much less giving rise to a facially plausible allegation) that AT&T and Facebook sought to accomplish "an object or course of action" of any sort; that AT&T and Facebook "reach[ed] a meeting of the minds" to pursue any course of action; that AT&T or Facebook undertook any "unlawful, overt acts . . . in pursuance" of *any* agreed-upon course of action between AT&T and Facebook; or that Plaintiffs suffered any resulting harm. *See id.* These failings doom all four of Plaintiffs' conspiracy claims.

iv) The final Joint Claim alleges that AT&T and Facebook violated a computer-crime provision in the Texas Penal Code. *See* Ex. 5 at 40 (citing Penal Code Title 7 Chapter 33.02). But again, "[t]he Texas Penal Code does not create a private right of action." *Paselk*, 2014 WL 12635934, at *4. And even if Plaintiffs had standing to assert a civil claim under the criminal Penal Code, their pleading fails to include adequate factual allegations indicating what qualifying "computer, computer network, or computer system" *belonging to Plaintiffs* AT&T and Facebook allegedly accessed. *See* Ex. 5 at 40; *see also Twombly*, 550 U.S. at 555 (holding that Rule 8 requires the plaintiff to provide notice of (1) "what the claim is" as well as (2) "the grounds upon which it rests").

28. Because "there is no possibility of recovery by" Plaintiffs against AT&T, the Court should hold that AT&T was improperly joined, and thus that there is complete diversity among the parties. *See Flagg*, 819 F.3d at 136.

## AMOUNT IN CONTROVERSY

29. Where removal is premised solely on diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy" except, in relevant part, where "State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A)(ii). In

such a case, removal is proper if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds the federal jurisdictional minimum of $75,000, excluding interest and costs.  *Id.* §§ 1332(a); 1446(c)(2)(B).

30. "State practice in Texas does not permit demand for an enumerated sum; as amended in 2013, Texas Rule of Civil Procedure 47 provides, in relevant part, that an original petition shall contain a statement that the damages sought are within the jurisdictional limits of the court or within one of five specified ranges." *Salinas v. Allstate Vehicle & Prop. Ins. Co.*, 2016 WL 8650475, at *2 (S.D. Tex. Sept. 28, 2016) (citing Tex. R. Civ. P. 47(b), (c)).

31. Ignoring the requirements of Texas Rule of Civil Procedure 47, Plaintiffs do not specify any qualifying range of damages contemplated by the state rule.  Instead, Plaintiffs merely claim to seek "relief over $200."  Ex. 5 at 2.  This flagrant noncompliance with Rule 47 suggests that Plaintiffs' ambiguous pleading is a bad-faith effort to evade this Court's jurisdiction.  *See Rodriguez v. State Farm Lloyds*, 2017 WL 10153539, at *3 (S.D. Tex. Nov. 3, 2017) (denying plaintiff's motion to remand and observing that plaintiff's "noncompliance with Rule 47(c) constitutes a bad-faith effort on the part of Plaintiff to evade federal jurisdiction").

32. A preponderance of the evidence demonstrates that the amount in controversy here exceeds $75,000.  Plaintiff pleaded *three times* in the Prior Action—which focused on the same alleged events underlying this case, but which contained fewer causes of action than are asserted here—that the amount in controversy exceeded $75,000.  *See* Prior Action, Dkt. 1 (Complaint) ¶ 2; *id.*, Dkt. 5 (First Amended Complaint) ¶¶ 2, 4; *id.*, Dkt. 20 (Second Amended Complaint) ¶¶ 4, 6.

33. Since those allegations in the Prior Action, Plaintiffs have only bolstered their lawsuit with more claims that could entitle them to *additional* monetary damages, including new claims for defamation, strict products liability, negligent product design, breach of the implied warranty of merchantability, fraud, and theft.  *See generally* Ex. 5.

34. Although some of the new claims hinge on alleged conduct that overlaps with allegations from the Prior Action, several of Plaintiffs' new claims focus on additional injuries

not contemplated by the Prior Action.  For example, Plaintiffs claim that Facebook's alleged defamation of Mr. Moates has injured his reputation, caused financial injury, and "exposed him to public hatred, contempt, [and] ridicule." *Id.* at 18.  Additionally, this action includes numerous products-liability claims relating to the Oculus devices owned by Plaintiff, who allegedly suffered "significant skin irritation" as a result of his use of the Oculus devices.  *Id.* at 25–27.  The alleged reputational and medical injuries underlying these claims are distinct injuries that, if proven, could give rise to additional monetary relief beyond the relief that is theoretically available for Plaintiffs' numerous other common-law and statutory claims.

35.     To be sure, Plaintiffs also abandoned their federal claims from the Prior Action.  But those claims added no meaningful monetary value to Prior Action, which relied primarily on Texas law for its claims seeking monetary relief.  Indeed, Mr. Moates admitted in a prior pleading that he was not seeking monetary relief for *any* of his federal antitrust claims.  *See* Prior Action, Dkt. 36 (Pl.'s Opp'n to Facebook's Mot. to Dismiss) at 6 (arguing that the statute of limitations for Plaintiff's antitrust claims was irrelevant "because the relief for such actions is not monetary but injunctive").  The Prior Action also contained several passing references to the federal Lanham Act, but Plaintiff never pleaded a claim under any specific provision of that Act.[6]  And while the Prior Action asserted a claim under the Americans with Disabilities Act, one of the alleged injuries underlying that claim—Facebook's allegedly unlawful advertising of disability-related medications to Plaintiff—is also at issue in the present case.  *Compare* Prior Action, Dkt. 20 at 36 (alleging that Plaintiff "suffered from discriminatory actions by Facebook when they targeted him for ads based on disabilities or behaviors of disabilities that he has"), *with* Ex. 5 at 39 (alleging that Facebook "shared private information with AT&T without consent

---

[6] *See* Prior Action, Dkt. 28 (Facebook's Mot. to Dismiss Second Amended Complaint) at 4 ("Plaintiff invokes certain sources of law in a redundant fashion across various causes of action without explanation: the DTPA and the Lanham Act are raised in his First, Second, Fifth, and Sixth Causes of Action, but Plaintiff nowhere explains which provision(s) of the Lanham Act he is relying on for relief. This disorganized and redundant style of pleading deprives Facebook of the fair notice to which it is entitled under Federal Rule 8.  *See Twombly*, 550 U.S. at 555.").

for the purposes of advertising," and that "when AT&T . . . creates an ad that only targets someone with anxiety, Facebook only targets people who are likely to have anxiety thereby suggesting to AT&T they have anxiety"). Accordingly, the abandonment of Plaintiffs' federal claims—when coupled with the addition of the numerous new state-law claims described above—does not suffice to distance Plaintiff from his numerous prior statements that his dispute with Facebook puts more than $75,000 at issue.

36. The only specific loss amount identified in the amended complaint is $10,546, the amount Plaintiffs allegedly invested in advertising through Facebook. But Plaintiffs' amended complaint identifies numerous other loss categories that could entitle Plaintiffs to substantial relief, including a loss of business due to Plaintiffs' inability to access Facebook's products, *see* Ex. 5 at 19 (claiming an "interfere[nce] with business operations"); the "significant emotional distress" suffered by Mr. Moates in connection with his loss of access to data stored on Facebook, including "school information," "business information," and "personal photos," *see id.* at 22, 37; the actual value of the data allegedly lost, *see id.* at 32; the harm to Mr. Moates's reputation caused by Facebook's alleged defamation, *see id.* at 18; and the various medical and health-related injuries allegedly caused by the Oculus devices, including "significant skin irritation, breakouts, and dark red skin," *see id.* at 27. After combining those loss categories with the alleged $10,546 loss in advertising investment, and after accounting for Plaintiffs' demand for exemplary damages due to Facebook's allegedly malicious and purposeful conduct, a preponderance of the evidence demonstrates that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See e.g.*, *id.* at 32–35 (alleging that Facebook acted with malice for purposes of six different claims); 28 U.S.C. § 1332(a).

## PROCEDURAL COMPLIANCE

37. As of the date of the filing of this Notice of Removal, AT&T Inc. has been served with the Complaint and Summons. But because AT&T is merely a nominal defendant who was not properly joined, Facebook need not obtain AT&T's consent in order to remove this action.

*See* 28 U.S.C. 1446(b)(2)(A) (providing that "all defendants who have been **properly** joined and served must join in or consent to the removal of the action" where an action is removed "solely under section 1441(a)" (emphasis added)); *Chavez v. Goodyear Tire & Rubber Co.*, 2018 WL 501092, at *3 (E.D. Tex. Jan. 22, 2018)) (observing that a removing defendant need not obtain consent from a co-defendant where that defendant is "a defendant is merely a nominal, unnecessary, or formal party-defendant") (quoting *Breitling v. LNV Corp.*, 86 F. Supp. 3d 564, 570 (N.D. Tex. 2015)).  For the same reasons set out at Paragraphs 23–28 above, which explain why AT&T was improperly joined, AT&T is merely a "nominal defendant" because "there is no possibility that the plaintiff would be able to establish a cause of action against" AT&T "in state court."  *Farias v. Bexar Cty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991); *see also Breitling*, 86 F. Supp. 3d at 572 (observing that the nominal defendant doctrine "involves a test substantially similar to the test for improper joinder").

38. Pursuant to 28 U.S.C. § 1446(d), Facebook will promptly file a Notice to State Court and Adverse Parties with the clerk of the 431st District Court of Denton County, Texas. The same Notice (to which a copy of this Notice of Removal will be appended) will promptly be served on Plaintiffs.

39. In accordance with 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders served upon" Facebook are attached as Exhibits 1 through 7 to the contemporaneously filed Jordan Declaration.

## RESERVATION OF RIGHTS AND DEFENSES

40. By filing this Notice of Removal, Facebook does not intend to waive—and thus hereby reserves—any objection as to personal jurisdiction, venue, and all other defenses.

## CONCLUSION

41. The prerequisites for removal under 28 U.S.C. §§ 1332, 1441, and 1446 have

been met.  If any questions arise as to the propriety of the removal of this action, Facebook requests the opportunity to present a brief, oral argument, and further evidence as necessary in support of its position that this case is removable to this Court.

**WHEREFORE,** Facebook removes this case to the United States District Court for the Eastern District of Texas, Sherman Division, being the District and Division for the county in which this action is pending, and respectfully requests that the filing of this Notice of Removal in this Court and with the 431st District Court of Denton County, Texas shall effect removal of this suit to this Court, and that no further proceedings be had in this case in the 431st District Court of Denton County, Texas.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

Dated:  September 7, 2021

By:  */s/ Allison Jacobsen*
Allison Jacobsen
Texas Bar No. 00783549
1445 Ross Ave, Suite 3700
Dallas, Texas 75202
Telephone:  214.979.3000
Facsimile:  214.880.0011
ajacobsen@huntonak.com
Attorney for Defendant FACEBOOK, INC.

1739803