# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| MICHAEL MOATES, DC CHRONICLE, and DC CHRONICLE LIMITED,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>FACEBOOK, INC. AND AT&T INC.,<br><br>　　　　Defendants. | Case No. 4:21-cv-00694 |

## DEFENDANT FACEBOOK, INC.'S
## MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

# **TABLE OF CONTENTS**

**Page(s)**

STATEMENT OF THE ISSUE PRESENTED ............................................................................ ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 5

I.      The Court Should Enforce Facebook's Forum-Selection Clause ....................................... 5

          A.      Facebook's Forum-Selection Clause is Valid and Encompasses Plaintiff's Claims ................................................................................................................... 5

          B.      No Extraordinary Circumstances Permit Disregarding Facebook's Forum-Selection Clause ................................................................................................... 8

          C.      The Joinder of DC Chronicle and DC Chronicle Limited Does not Alter the Analysis ................................................................................................................ 10

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Abat v. Chase Bank USA, N.A.*,
   738 F. Supp. 2d 1093 (C.D. Cal. 2010) ..................................................................................9

*ABC Rental Sys., Inc. v. Colortyme, Inc.*,
   893 F. Supp. 636 (E.D. Tex. 1995) ......................................................................................5, 6

*Atl. Marine Constr. Co. v. W.D. Tex.*,
   571 U.S. 49 (2013) ............................................................................................................ *passim*

*Beaubois v. Accolade Constr. Grp., Inc.*,
   2016 WL 94255 (S.D.N.Y. Jan. 7, 2016) ................................................................................6

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991) ........................................................................................................6, 8, 9

*CK DFW Partners Ltd. v. City Kitchens, Inc.*,
   2007 WL 2381259 (N.D. Tex. Aug. 17, 2007) .......................................................................6

*Dolin v. Facebook, Inc.*,
   289 F. Supp. 3d 1153 (D. Haw. 2018) ....................................................................................7

*Emrit v. Watts, Guerra, L.L.P.*,
   2014 WL 3970172 (W.D. Tex. Aug. 13, 2014) ..................................................................6, 10

*In re Facebook Biometric Info. Priv. Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
   2010 WL 3291750 (N.D. Cal. July 20, 2010) .........................................................................7

*Franklin v. Facebook, Inc.*,
   2015 WL 7755670 (N.D. Ga. Nov. 24, 2015) ........................................................................7

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................................6, 7

*Kidstar v. Facebook, Inc.*,
   2020 WL 4382279 (D.N.J. July 31, 2020) ..............................................................................7

*Memon v. Allied Domecq QSR*,
   385 F.3d 871 (5th Cir. 2004) .................................................................................................11

*Miller v. Facebook, Inc.*,
    2010 WL 9525523 (N.D. Ga. Jan. 15, 2010) ..................................................................9

*Moates v. Facebook Inc.*,
    No. 4:20-cv-896-ALM-KPJ .......................................................................1, 2, 5, 11

*Rowland v. California Men's Colony*,
    506 U.S. 194 (1993) ....................................................................................................11

*Thomas v. Facebook, Inc.*,
    2018 WL 3915585 (E.D. Cal. Aug. 15, 2018) ..............................................................7

*We Are the People, Inc. v. Facebook, Inc.*,
    2020 WL 2908260 (S.D.N.Y. June 3, 2020) ................................................................7

**Federal Statutes**

28 U.S.C. § 1404(a) ...............................................................................................................5, 10

28 U.S.C. § 1654 .........................................................................................................................11

**STATEMENT OF THE ISSUE PRESENTED**

Whether this case should be transferred to the Northern District of California pursuant to the forum-selection clause in Defendant Facebook, Inc.'s contracts with Plaintiff?

**INTRODUCTION**

This is a case of "déjà vu all over again." For the second time, Plaintiff Michael Moates has filed a lawsuit against Defendant Facebook, Inc. in Texas, alleging that Facebook violated various laws when it disabled his access to various Facebook services. And for the second time, Facebook hereby moves to transfer its dispute with Plaintiff to the U.S. District Court for the Northern District of California, where Plaintiff previously agreed to litigate any disputes arising from his use of Facebook's services.

In the previous case—*Michael Moates v. Facebook Inc.*, No. 4:20-cv-896-ALM-KPJ (the "Prior Action")—Plaintiff welcomed this Court's jurisdiction until the assigned magistrate judge recommended that this Court grant Facebook's first motion to transfer. *See* Prior Action, Dkt. 42 ("R&R"). The magistrate judge found that Plaintiff had agreed to a contract with Facebook containing a mandatory and enforceable forum-selection clause, that Plaintiff's claims all fell within the clause, and that no extraordinary circumstances counseled against transfer. *Id.* at 14–21. After issuance of the R&R, Plaintiff Moates voluntarily dismissed the Prior Action, thereby mooting Facebook's first motion to transfer.

Plaintiff Moates repackaged his claims against Facebook and filed them in state court, adding a non-diverse defendant—AT&T Inc.—in an attempt to keep Facebook from removing the case back to this Court. But Plaintiff's elaborate ruse failed. His addition of AT&T was

shown to be a sham,[1] and he retreated from his stated intention to remand the case to state court. This case is nearly indistinguishable from his Prior Action, and the same reasons require granting Facebook's motion here.  When Plaintiff created his Facebook accounts, he affirmed that he had read Facebook's Terms of Service ("Terms") and agreed to those Terms.  Plaintiff also acknowledged that, by continuing to use Facebook's services, he assented to modifications of the Terms posted on the Facebook website.  As relevant here, the Terms provide that any claim arising out of Plaintiff's use of Facebook's platform "will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County."  Declaration of Jenny Pricer ("Pricer Decl.") Ex. C § 4.4.  As the Supreme Court has recognized, such "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. W.D. Tex.*, 571 U.S. 49, 63 (2013) (emphasis added and alteration omitted).  This is not an exceptional case, so it must be transferred to the Northern District of California.

## BACKGROUND

Facebook operates a social networking platform where people can connect and share information with their friends and family.  The company's principal place of business is in Menlo Park, California, which is in San Mateo County, California.  Pricer Decl. ¶ 3.  Individuals using the Facebook service can create and share a variety of content with others.  They can create personal profiles to share their opinions, ideas, photos, videos, and other activities.  *Id.* ¶ 4.

---

[1] Promptly after Plaintiff named AT&T Inc. as a defendant, AT&T filed a verified denial pleading that it is not a "proper party" because it "was not involved in the action complained of in the . . . petition and engaged in none of the alleged acts, omissions, or conduct of which Plaintiffs complain."  Dkt. 9.  Facebook also explained in its Notice of Removal that Plaintiff fails to establish any cause of action against AT&T.  *See* Dkt. 1 ¶¶ 24–27.  Plaintiff, all but conceding his sham, then agreed to dismiss AT&T from this action.  *See* Dkt. 16 (stipulating to "file a Notice of Dismissal Without Prejudice of AT&T, Inc. no later than October 27"); Dkt. 18 (representing again that "AT&T is being dismissed" from this action).

Additionally, they can create pages that feature entities, brands, businesses, or causes. *Id.* They can also use Facebook to run advertisements. *Id.*

Plaintiff Michael Moates was a Facebook account holder. *See* Dkt. 8, Amended Complaint ("Compl.") at 1. As part of the user-registration process in place when Plaintiff opened his accounts in 2014 and 2017, Plaintiff was required to acknowledge that he had read and agreed to Facebook's Terms. *See* Pricer Decl. ¶¶ 5, 10, 11. He was also required to acknowledge that, by continuing to use Facebook's services, he assented to modifications to those Terms posted on the Facebook website. *Id.* ¶ 6. Indeed, as Plaintiff acknowledges, Facebook's Terms served as his contract with Facebook. Compl. at 18–19 (alleging that Facebook's 2014 "Statement of Rights and Responsibilities," as Facebook's Terms were known at the time, constitutes "[a] legally binding contract . . . between Moates and Defendant").

Facebook's Terms require that claims arising out of or relating to the use of Facebook's services be resolved in Northern California. Pricer Decl., Ex. C § 4.4. The Terms also provide that California law will govern any state-law claim. *Id.* In particular, the Terms state:

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products … you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.* The Terms also provide that users "may not use [Facebook's] Products to do or share anything … [t]hat is unlawful, misleading, discriminatory or fraudulent." *Id.* § 3.2.1. And they explain that Facebook "can remove or restrict access to content that is in violation of these provisions." *Id.* § 3.2. Further, if Facebook determines that a user has "clearly, seriously or repeatedly breached [Facebook's] Terms or Policies, including in particular [Facebook's]

- 3 -

1752932

Community Standards," Facebook reserves the right to "suspend or permanently disable access" to the user's account. *Id.* § 4.2.

Plaintiff purchased advertising from Facebook between May 7, 2018 and November 22, 2020, including at least $605 in advertising for DC Chronicle News. *See* Dkt. 8-1 (Exhibit A to Plaintiffs' Amended Complaint). As a necessary part of the "self-serve" advertising process—in which a Facebook user sets up an advertising account and then contracts with Facebook online—Plaintiff was required to accept and confirm (via a "Confirm" button) his agreement to Facebook's Terms, including the Self-Serve Ad Terms and the Facebook Advertising Guidelines, each time he purchased an advertisement. Pricer Decl. ¶ 13. Before clicking the "Confirm" button, Plaintiff would have been informed that: "By clicking 'Confirm,' you agree to the Facebook Terms of Service including your obligation to comply with the Self-Serve Ad Terms and the Facebook Advertising Guidelines."[2] *Id.* ¶ 14. The references to the "Terms of Service," the "Self-Serve Ad Terms," and the "Facebook Adverting Guidelines" were all set forth in distinct blue hyperlinks. *Id.*

Plaintiff filed the amended complaint in August 2021, seeking equitable, injunctive, and monetary relief. Compl. at 40–41. According to Plaintiff, Facebook violated myriad state and federal laws, as well as its own Terms, through its actions. *See id.* at 17–40 (alleged causes of action).

---

[2] The Self-Serve Ad Terms further require that "[i]f you are placing ads on someone else's behalf, you must have permission to place those ads, including the following: 1. You warrant that you have the legal authority to bind the advertiser to these Self-Serve Ad Terms and the [Terms of Service]. . . ." Pricer Decl. Ex. C § 13.1.

# ARGUMENT

When Plaintiff signed up for and continued using Facebook's services, he contractually agreed (as Plaintiff himself concedes, *see id.* at 18–19) to bring any claims arising out of or relating to his use of those services in the courts of Northern California. As the magistrate judge recommended in the Prior Action, this Court should hold Plaintiff to his agreement and transfer this case to the Northern District of California. *See* R&R at 21.

## I. The Court Should Enforce Facebook's Forum-Selection Clause

A forum-selection clause is properly enforced by a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co.*, 571 U.S. at 52. Although a court ordinarily evaluates a section 1404(a) motion by considering factors like the convenience of the parties and interests of justice, *id.* at 62, "[t]he calculus changes … when the parties' contract contains a valid forum-selection clause," *id.* at 63. Because such a clause "represents the parties' agreement as to the most proper forum," the Supreme Court has held that it "should be given controlling weight in all but the most exceptional cases." *Id.* (alteration omitted) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). In other words, so long as a forum-selection clause is valid and encompasses a plaintiff's claims, it should be enforced unless a plaintiff can show that "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. Plaintiff cannot meet that burden here, as the public interest favors transferring the case to the Northern District of California. The Court should therefore enforce Facebook's forum-selection clause.

### A. Facebook's Forum-Selection Clause is Valid and Encompasses Plaintiff's Claims

Forum-selection clauses are "prima facie valid." *ABC Rental Sys., Inc. v. Colortyme, Inc.*, 893 F. Supp. 636, 638 (E.D. Tex. 1995) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). This principle applies equally in the context of consumer form contracts, *see*

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–595 (1991), including those in click-through user agreements like Facebook's Terms, *see, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839–840 (S.D.N.Y. 2012) (collecting cases).  To show that Facebook's forum-selection clause is invalid, then, Plaintiff must "clearly show that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reason as fraud or overreaching."  *ABC Rental*, 893 F. Supp. at 638 (alteration in original) (quoting *M/S Bremen*, 407 U.S. at 15).  Plaintiff offers no argument to that effect—let alone a clear showing.

Indeed, Plaintiff himself affirms that Facebook's Terms served as his contract with Facebook.  Compl. at 18–19.  To be sure, Plaintiff alleges that Facebook breached this contract, *id.* at 19–20 (alleging four breach-of-contract claims), but "by asserting a cause of action for breach of contract, Plaintiff necessarily implies his belief that the [contract—including the forum-selection clause—] is enforceable."  *Emrit v. Watts, Guerra, L.L.P.*, 2014 WL 3970172, at *2 (W.D. Tex. Aug. 13, 2014); *see also CK DFW Partners Ltd. v. City Kitchens, Inc.*, 2007 WL 2381259, at *6 n.16 (N.D. Tex. Aug. 17, 2007) ("If a material breach of a contract were deemed to excuse further performance of the contract's forum selection clause, forum selection clauses could essentially be rendered meaningless in actions for breach of contract."); *Beaubois v. Accolade Constr. Grp., Inc.*, 2016 WL 94255, at *3 (S.D.N.Y. Jan. 7, 2016) (courts "routinely enforce forum-selection clauses against plaintiffs alleging breach of contract").  Plaintiff also insists that "he is not bound by" Facebook's "current Terms of Service" because "he never consented nor received notification of [them]."  Compl. at 11.  That is incorrect for the reason explained above—i.e., that Plaintiff, in creating his Facebook accounts, affirmed that by continuing to use Facebook's services, he assented to modifications of the Terms posted on the Facebook website.  *See supra* p. 2.  But it is also irrelevant for purposes of the forum-selection

clause:  That clause was not only in the current Terms (the only iteration Plaintiff asserts "he is not bound by," Compl. at 11), but was the same in all material respects when Plaintiff created his accounts and agreed to Facebook's Terms.  *See* Pricer Decl., Ex. A § 16.1; *id.*, Ex. B. § 15.1.

Plaintiff is correct that an agreement was formed when he opened his Facebook accounts:  During the user-registration process, he saw a bright-blue, underlined hyperlink of the phrase "Terms of Use" that directed him to Facebook's terms of service, *see* Pricer Decl. ¶ 5, and he was required to acknowledge that he had read and agreed to those Terms, *id.*; *see also, e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1164–67 (N.D. Cal. 2016) (finding that the plaintiffs had "assented to the user agreement when they signed up for Facebook"); *Fteja*, 841 F. Supp. 2d at 838–840 (same); *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *7 n.20 (N.D. Cal. July 20, 2010) (same).

Numerous courts have accordingly held that Facebook's forum-selection clause is valid and enforceable.  *See, e.g.*, *Kidstar v. Facebook, Inc.*, 2020 WL 4382279, at *3 (D.N.J. July 31, 2020); *We Are the People, Inc. v. Facebook, Inc.*, 2020 WL 2908260, at *2 (S.D.N.Y. June 3, 2020); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1159–60 (D. Haw. 2018) (collecting cases); *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (collecting cases); *Franklin v. Facebook, Inc.*, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015) ("The Court cannot identify a single instance where any federal court has struck down [Facebook's Terms] as an impermissible contract of adhesion . . . ."); *see also* R&R at 14 ("[T]he Court is further persuaded by the reasoning of other federal courts that have upheld Facebook's forum selection clauses.").  This Court should do the same.

Facebook's forum-selection clause also encompasses Plaintiff's claims.  Those claims are all grounded in Plaintiff's use of products and services offered by Facebook.  Moreover, Plaintiff

claims that he entered into Facebook's Terms in 2014 (Compl. at 18), that those terms served as his contract with Facebook (*id.* at 18–19), and that Facebook breached that contract (*id.* at 19–20). In other words, Plaintiff purports to sue Facebook to *enforce* Facebook's Terms. Given this, and the fact that Facebook's Terms allow for the disabling of accounts for breaches of Facebook's Terms or Community Standards, *supra* p. 3–4, this lawsuit plainly "arises out of or relates to [Facebook's] Terms," as well as to Plaintiff's use of "the Facebook Products." *See supra* p.3. (quoting Facebook's forum-selection clause).

Because Facebook's forum-selection clause is valid and enforceable here, this case must now be transferred to the Northern District of California, unless Plaintiff can show that "public-interest factors overwhelmingly disfavor a transfer," *Atl. Marine Constr. Co.*, 571 U.S. at 67. He cannot.

### B. No Extraordinary Circumstances Permit Disregarding Facebook's Forum-Selection Clause

Where, as here, a forum-selection clause is valid and applicable, a plaintiff "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id*. at 64; *see also Carnival Cruise Lines*, 499 U.S. at 595 (party seeking to avoid a forum-selection clause bears a "heavy burden of proof"). In this analysis, "the plaintiff's choice of forum merits no weight" and a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Constr. Co.*, 571 U.S. at 63–64. Thus, a court "may consider arguments about public-interest factors only," such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 & n.6 (alteration in original). Such factors "will rarely defeat a transfer motion," so the "practical result is that forum-selection clauses should control except in

unusual cases." *Id*. at 64. In other words, "a district court should transfer the case unless *extraordinary circumstances unrelated to the convenience of the parties* clearly disfavor a transfer." *Id.* at 52 (emphasis added).

There are no such extraordinary circumstances here. To the contrary, it is in the public interest to enforce Facebook's forum-selection clause. As an initial matter, the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63. Protecting parties' legitimate expectations is particularly important "for businesses with nationwide customers[,] to limit the risk and expenses of litigation under different laws in every state." *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010). Indeed, because the services of web-based companies with social media platforms, like Facebook, can be accessed almost anywhere, "striking [Facebook's] forum selection clause could wreak havoc on the entire social-networking internet industry" and force Facebook to "face litigation in every state in this country and in nations around the globe." *Miller v. Facebook, Inc.*, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010). That would not only harm Facebook, it could also have "adverse consequences for the users of Facebook's social-networking site and for other internet companies." *Id.*; *see also Carnival Cruise Lines*, 499 U.S. at 593–594 (summarizing benefits of a forum-selection clause for multi-jurisdiction businesses *and their customers*).

The public-interest factors outlined in *Atlantic Marine Construction Company* confirm that this Court should transfer the case to the Northern District of California. Facebook has experienced no "administrative difficulties," *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6, in resolving disputes in that forum, and the courts of the Northern District of California have considerable experience handling lawsuits against Internet companies like Facebook. To the

- 9 -

extent "local interest[s]" are at play, *id.*, this case has greater ties to California, where Facebook principally operates and where most of the relevant witnesses and evidence are located. *See* R&R at 18 ("Here, Facebook is headquartered in California; hence, the Northern District of California has a strong local interest in deciding this case."). California-based courts are also more "at home" with the law of California, *id.*, which governs Plaintiff's state-law claims. *See supra* p. 8; *see also* R&R at 19 ("A federal court sitting in California would be more familiar with California law than this Court."). To be sure, Plaintiff purports to bring his state law claims under *Texas* law, but he is bound by Facebook's Terms, and those Terms provide that "the laws of the State of California will govern the[] Terms and any claim, without regard to conflict of law provisions," *supra* p. 3. *See also Emrit*, 2014 WL 3970172 at *2 (by asserting breach of contract, a plaintiff agrees that the contract is enforceable); *Atl. Marine Constr. Co.*, 571 U.S. at 64 ("when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules"); *see also* R&R at 20 (observing that "the Northern District of California is deeply familiar with suits filed against Facebook by its former and current users").

In short, this is not one of the "rare[]" cases (*Atl. Marine Constr. Co.*, 571 U.S. at 64) in which extraordinary circumstances permit a plaintiff to disregard a valid forum-selection clause. The case belongs in California.

  **C. The Joinder of DC Chronicle and DC Chronicle Limited Does not Alter the Analysis**

Finally, the Court should reject Plaintiff's suggestion that that his joinder of Plaintiffs DC Chronicle and DC Chronicle Limited somehow precludes enforcement of the forum-selection clause to which he agreed. *See* Compl. at 19 (arguing that the Terms "did not apply to DC Chronicle and to date DC Chronicle has not signed an agreement with the Defendant"). By

- 10 -

purchasing advertising for DC Chronicle between May 7, 2018 and November 22, 2020, *see* Dkt. 8-1, Plaintiff Moates committed DC Chronicle to abide by Facebook's Terms.  Pricer Decl. ¶¶ 13–14; Ex. D (Self-Serve Ad Terms) at § 13.1 ("If you are placing ads on someone else's behalf, you must have permission to place those ads, including the following: 1. You warrant that you have the legal authority to bind the advertiser to these Self-Serve Ad Terms and the [Terms of Service] . . . .").

Moreover, it is improper for the DC Chronicle entities to be advancing claims in this Court without representation by counsel.  *See Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993) ("the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney"); *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (observing "the well-settled rule of law that a corporation cannot appear in federal court unless represented by a licensed attorney").  Plaintiff Moates agrees, stating—in a pleading filed yesterday—that "DC Chronicle and DC Chronicle are going to pursue a separate action in small claims court" and that those entities "cannot be represented pro se, as this court[] previously acknowledged." Dkt. 18 at 1.  Just as the magistrate judge ordered in the Prior Action, this Court must prohibit the DC Chronicle entities from pressing any claims in this case.  *See* Prior Action, Dkt. 12 at 2.

## CONCLUSION

For the foregoing reasons, Defendant Facebook, Inc. respectfully asks that the Court hold Plaintiff Moates and the DC Chronicle entities to their contracts and transfer this case to the Northern District of California.

Dated:  October 28, 2021

Respectfully submitted,

*[signature]*

Allison Jacobsen
Texas Bar No. 00783549
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone:  214.979.3000
Facsimile:  214.880.0011
ajacobsen@huntonak.com
*Attorney for Defendant FACEBOOK, INC.*

## CERTIFICATE OF CONFERENCE

I, Allison F. Jacobsen, hereby certify that on October 14, 2021, I spoke with Amber W. Booker, counsel for AT&T, Inc. ("AT&T") in this matter.  AT&T agreed to the stipulation/proposed order related to the briefing schedule for Motions to Transfer. Plaintiff has sought leave to amend to dismiss AT&T, and thus, AT&T does not object to the relief requested.  Plaintiffs also previously confirmed that they agree to the briefing schedule but oppose the relief requested in Facebook's Motion.

*[signature]*

Allison F. Jacobsen

1752932

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 28th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of the same to all counsel of record.  I further certify that I have served AT&T, Inc. and Plaintiffs via email.

*/s/ Allison Jacobsen*

Allison Jacobsen