IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MICHAEL MOATES, DC CHRONICLE, and DC CHRONICLE LIMITED,<br><br>    Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC. and AT&T INC.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§  Civil Action No.: 4:21-cv-694-ALM-KPJ<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are the parties' cross motions to transfer venue. In his Motion to Transfer Venue and Consolidate and in the Alternative Motion for Hearing on the Matter ("Plaintiff's Motion") (Dkt. 15), Plaintiff Michael Moates[1] ("Mr. Moates" or "Plaintiff"), proceeding *pro se*, requests the Court transfer this action to the Southern District of Florida. *See* Dkt. 15. Defendant Facebook, Inc. ("Facebook") filed a response in opposition to Plaintiff's Motion. *See* Dkt. 19. In a separate Motion to Transfer ("Facebook's Motion") (Dkt. 20), Facebook requests the Court transfer this action to the Northern District of California. Mr. Moates did not file a response to Facebook's Motion. *See* Dkt. 22. Upon consideration, the Court recommends Plaintiff's Motion (Dkt. 15) be **DENIED** and Facebook's Motion (Dkt. 20) be **GRANTED.** The Court recommends this action be **TRANSFERRED** to the Northern District of California.

---

[1] Plaintiff's Motion was filed by Mr. Moates, as well as DC Chronicle and DC Chronicle Limited. *See* Dkt. 15. DC Chronicle and DC Chronicle Limited have since been dismissed from this litigation. *see* Dkt. 26.

### I.     BACKGROUND

Mr. Moates, along with former-plaintiffs DC Chronicle and DC Chronicle Limited, brought this action in the 431st District Court of Denton County, Texas, against Facebook and AT&T Inc. *See* Dkts. 1–4; 8. Facebook removed this action on September 7, 2021. *See* Dkt. 1. On March 8, 2022, the District Judge dismissed all claims asserted by DC Chronicle and DC Chronicle Limited, as well as Mr. Moates's claims against AT&T Inc. *See* Dkt. 26. Mr. Moates and Facebook are the sole remaining parties in this action.

Mr. Moates, proceeding *pro se*, alleges he operated online Facebook pages, which enabled him to earn income through "engagement of posts." *See* Dkt. 8 at 3. Mr. Moates alleges that, on October 7, 2020, Mr. Moates was notified by Facebook that "he was not following community standards" and that, on October 20, 2020, Facebook, without notice or explanation, "disabled access to the Plaintiffs Facebook . . . (which included access to Messages, Profile Data, Groups, Pages and More) and Facebook Business Manager Account (which included Creator Studio, Pages, and Ads)." *See id.* at 3–4. Mr. Moates further alleges Facebook terminated Mr. Moates's access to his Instagram, Oculus, Crowd Tangle, and Messenger accounts. *See id.* at 4. Mr. Moates states he was then informed his accounts were permanently disabled for violations of Facebook's Terms of Service. *See id.* at 5. Mr. Moates further alleges Facebook collected information without his consent and failed to protect his information. *See id.* at 11.

Mr. Moates asserts a litany of claims against Facebook, including: libel; breach of contract; violations of the Texas Deceptive Trade Practices Act; product liability claims; claims for fraud, "aiding and encouraging suicide," and "data theft" under the "Penal Code"; claims for "data/cyber security," "biometric data," and the "right to adequate assurance of performance" under the Texas Business and Commerce Code; and violations of the Texas Constitution. *See* Dkt. 8 at 17–37.

Both parties request this action be transferred out of the Eastern District of Texas. Mr. Moates requests this action be transferred to the Southern District of Florida and consolidated with another action that was, at the time Mr. Moates's Motion was filed, pending in the Southern District of Florida.[2] *See* Dkt. 15. Mr. Moates represents he "will submit to the jurisdiction of the Southern District of FL – Miami Division" and that consolidating the two cases "would be in the best interest of finality, judicial economy and fairness." *Id.* at 2. In its response, Facebook argues transfer would be improper, as "the parties have already agreed to litigate this case in California," and further, that the Court does not have the authority to consolidate this action with an action pending in another federal district. *See* Dkt. 19 at 3–4.

Instead, Facebook requests this case be transferred to the Northern District of California pursuant to three forum selection clauses. *See* Dkt. 20. According to Facebook, three Terms of Service governed Mr. Moates's relationship with Facebook from 2014 (when Mr. Moates first registered a Facebook account) to 2020 (when Mr. Moates lost access to his accounts). *See id.* at 7; Dkt. 20-1 at 2–3. The first and second Terms of Service—dated November 15, 2013, and January 30, 2015, respectively—have identical forum selection clauses and choice of law provisions. *See* Dkt. 20-2 at 2, 7; Dkt. 20-3 at 2, 4. They provide:

> You will resolve any claim, cause of action or dispute (claim) you have with us arising out of or relating to [these Terms] or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions.

*See* Dkt. 20-2 at 7; Dkt. 20-3 at 4. The third Terms of Service, dated October 1, 2020, provides:

---

[2] The case pending in the Southern District of Florida has since been transferred to the Northern District of California pursuant to Facebook's forum selection clause. *See* Order (Dkt. 108), *Trump v. Facebook, Inc.* No. 1:21-cv-22440 (S.D. Fla. Nov. 19, 2021).

3

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

Dkt. 20-4 at 6, 7.

Facebook argues the foregoing forum selection clauses are valid, encompass Mr. Moates's claims in this lawsuit, and require this case to be transferred to the Northern District of California. *See* Dkt. 20. Mr. Moates did not file a response to Facebook's Motion. *See* Dkt. 22.

## I. LEGAL STANDARD

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In cases not involving a forum selection clause, the Court determines the propriety of transfer based on the convenience of the parties (referred to as the "private interest factors"), as well as various public-interest considerations (referred to as the "public interest factors"). *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) (citing 28 U.S.C. § 1404(a)). However, the Court's analysis changes if the parties have contracted for a valid forum selection clause, as the forum selection clause "represents the parties' agreement as to the most proper forum." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In such cases, the Court must afford the forum selection clause "controlling weight in all but the most exceptional cases." *Id.*

In considering whether to transfer a case pursuant to a forum selection clause, the Court first determines whether the forum selection clause is mandatory or permissive. *Weber v. PACT*

4

*XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). The Court next decides whether the forum selection clause is valid and enforceable and whether the parties' dispute falls within its scope. *Id.* at 770, 773; *Coleman v. Brozen*, No. 4:19-cv-705, 2020 WL 2200220, at *2–3 (E.D. Tex. May 6, 2020). Finally, the Court considers whether the case presents exceptional circumstances that justify denying transfer notwithstanding the valid forum selection clause. *Weber*, 811 F.3d at 775–76; *see Atl. Marine*, 571 U.S. at 62 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.").

## II.   ANALYSIS

### A. The forum selection clauses are mandatory.

Only a mandatory forum selection clause justifies transfer. *See Weber*, 811 F.3d at 768. A clause is mandatory if it "contains clear language specifying that litigation *must* occur in the specified forum . . . ." *Id.* In contrast, a clause is permissive if it contains language stating a specific court "shall have jurisdiction" or other language indicating concurrent jurisdiction. *Id.* Here, to decide whether the forum selection clauses are mandatory or permissive, the Court first applies Texas choice-of-law rules to determine which substantive law governs their interpretation. *Id.* at 769. The Court will then apply the appropriate substantive law to determine if the forum selection clauses are mandatory or permissive. *Id.*

1. Choice of Law

A federal court sitting in diversity must apply the forum state's choice-of-law rules to determine which substantive law governs the interpretation of the forum selection clause. *Id.* at 770, 771. Texas follows the Restatement (Second) of Conflict of Laws, which provides that the "law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties" shall apply. *Id.* at 771 (quoting RESTATEMENT (SECOND) OF CONFLICT

5

OF LAWS § 188 (1971)). However, if there is a governing contract containing a choice of law provision, the parties' choice of law is applied to all claims arising from the contract, including any forum selection clause contained therein. *See Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). But Texas courts will not enforce choice of law provisions if the law of the chosen state violates a fundamental public policy of Texas or the contract bears no reasonable relation to the chosen state. *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 n.5 (5th Cir. 1993) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990)).

Here, the Terms of Service provide California law "will govern" claims arising between the parties. *See* Dkt. 20-2 at 7; Dkt. 20-3 at 4; Dkt. 20-4 at 6. Because Facebook is headquartered in California, *see* Dkt. 20-1 at 2, the Terms of Service bear a reasonable relation to California. *See Marquis Software Sols., Inc. v. Robb*, No. 3:20-cv-372-B, 2020 WL 955901, at *4 (N.D. Tex. Feb. 27, 2020). The parties do not identify an aspect of California law that violates a fundamental public policy of Texas. Accordingly, the Court must interpret the forum selection clauses pursuant to California law. *See Exxon Corp.*, 4 F.3d at 1298 n.5.

2. Mandatory or Permissive

The Court now applies California law to determine whether the forum selection clauses are mandatory or permissive. "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). In California, where a forum selection clause uses the word "exclusively" or "exclusive," the forum selection clause is mandatory. *See Berg v. MTC Elecs. Techs. Co.*, 71 Cal. Rptr. 2d 523, 530 (Cal. Ct. App. 1998) ("[L]anguage giving exclusive jurisdiction to the forum is required."); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75,

6

77–78 (9th Cir. 1987) (noting forum selection clause that confers exclusive jurisdiction in a forum is mandatory).

Here, the November 15, 2013 and January 30, 2015 Terms of Service state, "You will resolve any claim . . . arising out of or relating to [these Terms] or Facebook *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims." Dkt. 20-2 at 7; Dkt. 20-3 at 4 (emphasis added). The October 1, 2020 Terms of Service also states all claims will be "resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mateo County . . . ." Dkt. 20-4 at 5 (emphasis added). The Court finds the forum selection clauses are mandatory because they provide for exclusive jurisdiction in the Northern District of California or a state court located in San Mateo County. *See Berg*, 71 Cal. Rptr. 2d at 530; *Hunt Wesson Foods,* 817 F.2d at 77–78.

### B. The forum selection clauses are valid and enforceable.

Courts apply federal law to determine the validity and enforceability of a forum selection clause. *See All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (first citing *Braspetro Oil Servs. Co. v. Modec (USA)*, 240 F. App'x 612, 615 (5th Cir. 2007); then citing *Haynsworth v. Corporation*, 121 F.3d 956, 962 (5th Cir. 1997)). In the Fifth Circuit, there is a "strong presumption" in favor of enforcing mandatory forum selection clauses. *Weber*, 811 F.3d at 773. As such, "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). The party opposing enforcement bears a "heavy burden" to establish unreasonableness. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991).

7

In this case, Mr. Moates has not disputed the validity of the forum selection clauses. Even so, district courts have often upheld the validity of Facebook's forum selection clauses. *See, e.g., Kidstar v. Facebook, Inc.*, No. 2:18-cv-13558, 2020 WL 4382279, at *3 n.6 (D.N.J. July 31, 2020) (collecting cases); *Thomas v. Facebook, Inc.*, No. 1:18-cv-856, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("Indeed, the Court is not aware of any case concluding that the forum selection clause in Facebook's SRR is invalid."). Indeed, in a previous case between Mr. Moates and Facebook, the Court found Facebook's forum selection clauses to be valid and enforceable. *See Moates v. Facebook, Inc.*, No. 4:20-cv-896, 2021 WL 3013371, at *7 (E.D. Tex. May 14, 2021).[3] Hence, the Court finds the forum selection clauses are valid and enforceable. *See Kevlin*, 46 F.3d at 15.

**C.  This dispute falls within the scope of the forum selection clauses.**

As noted above, the Court must interpret the forum selection clauses using California law. Under California law, broadly worded forum selection clauses—which contain language such as "any claim arising from or related to" a certain agreement—encompass all tort and contract claims that may arise under, or from, the contractual relationship. *See Howard v. Goldbloom*, 241 Cal. Rptr. 3d 743, 746 (Cal. Ct. App. 2018); *Olinick v. BMG Ent.*, 42 Cal. Rptr. 3d 268, 278 (Cal. Ct. App. 2006) (holding "all disputes arising under this Agreement" encompasses all causes of action arising from or related to the agreement regardless of how they are categorized). That is, in California, such clauses encompass all allegations that "touch matters" covered by the contract.

---

[3] In the previous case, Facebook filed a motion to transfer venue pursuant to Facebook's forum selection clauses. *See* Dkt. 29, *Moates v. Facebook, Inc.*, No. 4:20-cv-896 (E.D. Tex. May 14, 2021). Mr. Moates filed a response in opposition, *see id.* Dkt. 37, and Facebook filed a reply, *see id.* Dkt. 39. On May 14, 2021, the Court entered a Report and Recommendation, which recommended the District Judge grant Facebook's motion and transfer the action to the Northern District of California. *See id.* Dkt. 42. On May 28, 2021, Mr. Moates filed objections to the Report and Recommendation, *see id.* Dkt. 45, to which Facebook filed a response, *see id.* Dkt. 48. Before the District Judge entered a decision on the motion to transfer, Mr. Moates voluntarily dismissed the action pursuant to Federal Rule of Civil Procedure 41(a). *See id.* Dkts. 50, 51.

*See Ramos v. Superior Ct.*, 239 Cal. Rptr. 3d 679, 689 (Cal. Ct. App. 2018); *Rice v. Downs*, 203 Cal. Rptr. 3d 555, 563 (Cal. Ct. App. 2016) ("There is no requirement that the cause of action arising out of a contractual dispute must be itself contractual. At most, the requirement is that *the dispute* must arise out of the contract." (quoting *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 99 Cal. Rptr. 2d 809, 816 (Cal. Ct. App. 2000))).

Here, all three Terms of Service contain broad forum selection clauses that apply to Mr. Moates's contractual claims, his tort claims arising from the contractual claims, and all claims that "touch matters" covered by the Terms of Service. *See Ramos*, 239 Cal. Rptr. 3d at 689. Indeed, the first two Terms of Service require Mr. Moates to litigate in California "any claim, cause of action or dispute" "arising out of or relating to [the Terms of Service] or Facebook." Dkt. 20-2 at 7; Dkt. 20-3 at 4. The third (and most recent) Terms of Service contains these provisions nearly word for word, though this forum selection clause also encompasses claims arising out of or relating to "Facebook Products," rather than just "Facebook." Dkt. 20-4 at 6. Because each of Mr. Moates's alleged claims concern his Facebook accounts, his activities conducted while using the accounts, Facebook's collection of information from his online activities, the termination of his accounts, and Facebook's allegedly fraudulent acts related to Mr. Moates's Facebook accounts, the Court finds each of Mr. Moates's claims fall within the broad scope of the forum selection clauses.

### D. The forum selection clauses must be given controlling weight.

If a forum selection clause is valid, mandatory, and encompasses the plaintiff's claims, the forum selection clause must be given "controlling weight"—meaning the district court must grant the motion to transfer venue—unless it finds that extraordinary circumstances justify denying the motion to transfer venue. *See Atl. Marine*, 571 U.S. at 62; *Weber*, 811 F.3d at 767, 776. In making

9

this determination, the Court considers the "public interest factors" relevant to transfer: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Atl. Marine*, 571 U.S. at 62 n.6, 64; *Weber*, 811 F.3d at 776. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. The party resisting the forum selection clause— here, Mr. Moates—bears the heavy burden of showing that the public interest factors "overwhelmingly disfavor" transfer. *Id.* at 67.

Federal courts have afforded "controlling weight" to Facebook's forum selection clauses, finding that the public interest factors do not "overwhelmingly disfavor" transfer to the Northern District of California. *See, e.g.*, Order (Dkt. 108), *Trump v. Facebook, Inc.*, No. 1:21-cv-22440 (S.D. Fla. Nov. 19, 2021); *Kidstar*, 2020 WL 4382279, at *5; *We Are the People, Inc. v. Facebook, Inc.*, No. 19-cv-8871, 2020 WL 2908260, at *2 (S.D.N.Y. June 3, 2020).

In this case, Mr. Moates failed to meet his burden, as Mr. Moates did not present any argument that the public interest factors disfavor transfer to the Northern District of California. Nevertheless, the Court has considered the public interest factors and finds they do not "overwhelmingly disfavor" transfer to the Northern District of California. Of particular significance, the Northern District of California has a strong local interest in deciding this case, given that Facebook is headquartered in California, *see* Dkt. 20-1 at 2. *Moates*, 2021 WL 3013371, at *10; *see Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-1272, 2016 WL 7042221, at *4 (E.D. Tex. June 9, 2016) (A "judicial district's local interest in a case is strong 'when the cause of action calls into question the work and reputation of several individuals residing in or near the district who

presumably conduct business in that community.'" (quoting *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009))). Further, as noted above, many federal courts have transferred actions brought against Facebook to the Northern District of California pursuant to Facebook's forum selection clauses. The Northern District of California is thus deeply familiar with suits filed against Facebook and is well-suited to adjudicate this dispute. *Moates*, 2021 WL 3013371, at *10.

Accordingly, the forum selection clauses—which represent the parties' agreement to litigate this dispute in California—must be given controlling weight. *See Atl. Marine*, 571 U.S. at 63, 64; *Weber*, 811 F.3d at 776 (holding the district court properly granted a Section 1404(a) motion where the non-movant provided only cursory arguments regarding the public interest factors and, therefore, did not meet his "high burden of persuasion" to avoid enforcement of the forum selection clause).

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends Facebook's Motion (Dkt. 20) be **GRANTED** and Plaintiff's Motion (Dkt. 15) be **DENIED**. The Court recommends this action be transferred to the Northern District of California.

Within fourteen (14) days after service of magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 29 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 13th day of June, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE